IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICOLE MEDICAL EQUIPMENT & SUPPLY, INC., <br> Plaintiff, | : <br> : <br> : <br> : | CIVIL ACTION <br> 10-389 |
| v. | : <br> : | |
| TRICENTURION, INC. and NHIC CORP. <br> Defendants | : <br> : <br> : <br> : | |

## MEMORANDUM OPINION AND ORDER

**Rufe, J.**                                                                                  **March 28, 2011**

      Plaintiff Nicole Medical Equipment & Supply, Inc. ("Nicole Medical"), a durable medical equipment ("DME") supplier, has filed suit against TriCenturion, Inc. a Program Safeguard Contractor for the Centers for Medicaid and Medicare Services ("CMS"), and against NHIC Corp., a Medicare insurance carrier. Plaintiff claims that Defendants wrongfully found Plaintiff had been overpaid for certain Medicare claims, withheld payments to Plaintiff to recoup those overpayments, and thus caused severe financial damage to Plaintiff, resulting in the closure of its business. Specifically, Plaintiff alleges the following state law claims: negligence in re-opening previously paid claims, trespass (against TriCenturion only), unjust enrichment, intentional interference with contractual relations, malicious prosecution (against TriCenturion only), and extreme and outrageous conduct. Plaintiff also alleges one federal law claim: breach of statutory duty of care under 42 U.S.C. §1320c-6(b). Defendants have filed a motion to dismiss all claims on the grounds that: 1) Plaintiff has not named and served the proper defendant--the Secretary of

1

Health and Human Services for the United States of America ("Secretary"); 2) the Court lacks subject matter jurisdiction over Plaintiff's claims because Plaintiff has not exhausted its administrative remedies; and 3) Defendants, as Medicare contractors acting on behalf of the United States, are entitled to sovereign immunity from common law tort actions. For the reasons set forth below, the Court finds it does not have subject matter jurisdiction over Plaintiff's claims, and, as an alternative basis for dismissal, finds that sovereign immunity bars all claims.

**Introduction and Factual Background**

Defendant TriCenturion is a Medicare Program Safeguard Contractor (PSC) which, pursuant to its contract with Medicare, performs program integrity tasks such as fraud and overpayment investigations on behalf of the Secretary. Defendant NHIC is the Medicare carrier for DME in Medicare Region A. Plaintiff is a provider of DME in Region A. On May 20, 2002, TriCenturion performed an unannounced audit of Plaintiff's business records. It found evidence of an overpayment for motorized wheelchairs and medical beds. Although the United States Attorney did not find evidence of fraud, TriCenturion continued to believe that Plaintiff had improperly billed Medicare for some DME. Based on extrapolation from a sample, TriCenturion calculated an estimated amount of overpayment, and instructed the regional carrier to institute a 100% offset against other payments due to Plaintiff under Medicare. HealthNow, the Region A DME carrier prior to NHIC, initially instituted the 100% offset, but then reversed its position and stopped the recoupment. When NHIC succeeded HealthNow, TriCenturion instructed NHIC to re-institute the offset, which NHIC did in July 2006. By January 2007, this allegedly forced Plaintiff to terminate all business operations.

Plaintiff appealed the overpayment calculation and offset, and received a fully favorable

opinion from the administrative law judge in February 2007. This opinion was upheld by the Medicare Appeals Council.[1] Although Plaintiff was successful in the administrative appeals process, it alleges that the actions of Defendants caused Plaintiff to become insolvent and unable to continue business operations. Therefore, Plaintiff initiated this tort action against Defendants. Having already been awarded the payment of money improperly withheld by Defendants, in this suit, Plaintiff is not seeking reimbursement for the DME it provided to Medicare beneficiaries, but rather damages for collateral injuries caused by Defendants' investigation and determination of overpayment, and their recoupment of that overpayment.

Plaintiff invokes the Court's diversity jurisdiction under 28 U.S.C. § 1332, as it is diverse from both Defendants and the amount in controversy exceeds $75,000.00.

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a complaint for lack of subject matter jurisdiction. Plaintiff has the burden of establishing subject matter jurisdiction.[2] A court evaluating a facial challenge to jurisdiction must rely solely on the pleadings, accept the allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.[3] A court evaluating a factual challenge to jurisdiction (meaning Defendants dispute the existence of certain jurisdictional facts alleged by Plaintiffs), the Court is "free to

---

[1] The Medicaid Appeals Council found that TriCenturion did not follow the proper procedures and time lines for reopening claims and recouping an administrative overpayment, absent proof of fraud, and therefore found in favor of Plaintiff.

[2] Carpet Group Int'l v. Oriental Rug Imp. Ass'n, 227 F.3d 62, 69 (3d Cir. 2000); Mortensen v. First Fed. Sav. & Loan Assoc., 549 F.2d 884, 891 (3d Cir. 1977).

[3] Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000); Mortensen, 549 F.2d at 891.

3

weigh the evidence and satisfy itself as to the existence of its power to hear the case."[4]

Dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain statement" does not possess enough substance to show that plaintiff is entitled to relief.[5] In determining whether a motion to dismiss is appropriate the court must consider those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[6] Courts are not bound to accept as true legal conclusions couched as factual allegations.[7] Something more than a mere *possibility* of a claim must be alleged; the plaintiff must allege "enough facts to state a claim for relief that is plausible on its face."[8] The Complaint must set forth direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.[9] The court has no duty to "conjure up unpleaded facts that might turn a frivolous action. . . into a substantial one."[10]

**Discussion**

1. Real Party in Interest

Defendant argues that plaintiff has failed to name and effect service on the proper party

---

[4] Id.

[5] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).

[6] ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994); Fay v. Muhlenberg Coll., No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[7] Twombly, 550 U.S. at 555, 564.

[8] Id. at 570.

[9] Id. at 562.

[10] Id. at 562 (citing McGregor v. Indus. Excess Landfill, Inc., 856 F.2d 39, 42-43 (6th Cir. 1988).

defendant in this case: the Secretary of Health and Human Services for the United States.[11] The Secretary is the federal official responsible for administering the Medicare program, and is authorized by the Medicare Act to enter into contractual agreements with private entities (such as Defendants) for the performance of statutory and regulatory responsibilities.[12] Medicare contractors act as agents working on behalf of the Secretary. Thus, Defendants argue, the Secretary is the real party in interest to this suit. In support, they cite the indemnity provision of the Medicare regulations, which reads:

> Intermediaries and carriers act on behalf of CMS in carrying out certain administrative responsibilities that the law imposes. Accordingly, their agreements and contracts contain clauses for indemnification with respect to actions taken on behalf of CMS and CMS is the real party of interest in any litigation involving the administration of the program.[13]

Despite this indemnity clause, it is proper for the Plaintiff to sue the carriers directly, without also naming the Secretary.[14] The Court finds that the interests of the United States and the Secretary are properly protected by the Department of Justice, which has entered an appearance and is providing representation for both Defendants.[15] Accordingly it will not dismiss the case for failure to name the Secretary as a party.

---

[11] In this case, the United States has not sought to intervene as a real party in interest, but, pursuant to 28 U.S.C. § 517, United States Department of Justice has elected to represent both Defendants because of their contracts with the Medicare Program.

[12] 42 U.S.C. §1395, et seq.

[13] 42 C.F.R § 421.5(b).

[14] Reg'l. Med. Trans., Inc. v. Highmark, Inc., 541 F. Supp. 2d 719, 733 n. 6 (E.D. Pa. 2008).

[15] Id.

2. <u>Subject Matter Jurisdiction: The Jurisdictional Bar in 42 U.S.C. § 405(h)</u>

The Medicare Act contains a detailed administrative procedure for contesting a Medicare contractor's decisions, with a limited role for district court review of final administrative decisions.[16] Judicial review is subject to the jurisdictional bar set forth in § 405(h), which provides that:

> The findings and decision of the [Secretary of Health and Human Services] after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.[17]

Section 405(h) is not merely an administrative exhaustion requirement.[18] It contains a waivable requirement that all administrative remedies be fully pursued, but also a nonwaivable requirement that all claims be *presented* for administrative review.[19] The Supreme Court has ruled that 405(h) operates as a complete bar to jurisdiction over claims arising under the Medicare Act, except as provided for in 405(g),[20] unless the plaintiff can establish that a strict application of 405(h) would mean no review is available at all.[21]

---

[16] 42 U.S.C. § 405(g)-(h); <u>Heckler v. Ringer</u>, 466 U.S. 602, 605 (1984).

[17] 42 U.S.C. § 405(h) (made applicable to Medicaid by 42 U.S.C. §1395ii).

[18] <u>Weinberger v. Salfi</u>, 422 U.S. 749, 757 (1975).

[19] <u>Ringer</u>, 466 U.S. at 617.

[20] 42 U.S.C. §405(g) sets forth the comprehensive administrative scheme for adjudicating claims arising under the Medicare Act.

[21] <u>Shalala v. Ill. Council on Long Term Care, Inc.</u>, 529 U.S. 1, 19 (2000); <u>Fanning v. United States</u>, 346 F.3d 386, 392 (3d Cir. 2002) (§405(h) bars jurisdiction and requires that plaintiffs proceed through the special review channel created by the Medicare Act).

Plaintiff does not allege that it has satisfied the nonwaivable presentment requirement, nor does it ask the Court to waive full exhaustion because imposing it would be unfair. Rather, it seeks to avoid the jurisdictional requirements of presentment and exhaustion by arguing that 405(h) does not apply to its claims because they were brought pursuant to the Court's diversity jurisdiction. To decide if Plaintiff is correct, the Court must determine whether: 1) Defendants are officers or employees of the United States; 2) the third sentence of §405(h) bars diversity-based jurisdiction as well as federal-question jurisdiction and jurisdiction over suits against the United States; and 3) the claims "arise under" the Medicare Act.[22]

*Defendants are Officers or Employees of the United States*

It is clear that contractors such as Defendants are officers or employees of the United States government when they are acting under their contracts with CMS.[23]

*§ 405(h) Extends to Diversity Based Claims*

Plaintiff argues that § 405(h) plainly applies only to cases brought under 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1346 (jurisdiction over suits against the United States), whereas it has brought its claims pursuant to 28 U.S.C. §1332 (diversity jurisdiction). However, several federal appellate courts have ruled that, despite its wording, §405(h) also bars claims based on diversity of citizenship.[24] As the Seventh Circuit explains:

---

[22] 42 U.S.C. §405(h); Midland Psychiatric Assoc., Inc. v. United States, 145 F.3d 1000, 1003 (8th Cir. 1998).

[23] 42 U.S.C. §1395u(a); Midland Psychiatric, 145 F.3d at 1003-4; Bodimetric Health Servs., Inc. v. Aetna Life & Cas., 903 F.2d 480, 487-88 (7th Cir. 1990).

[24] Bodimetric, 903 F.2d at 488; Midland Psychiatric, 145 F.3d 1003-4; see also, St. Mary Hospital v. Hiser, 123 B.R. 14, 18 (E.D. Pa. 1991) (holding that Section 405(h) and not Section 1334 controls the determination of the court's jurisdiction over a bankruptcy matter involving a Medicaid dispute, applying the reasoning set forth in Bodimetric).

7

> Upon its *original* enactment, section 405(h) barred all actions brought pursuant to 28 U.S.C. § 41, which, in turn, contained all of the grants to jurisdiction to the United States district courts under Title 28, including the predecessor to the current diversity grant, 28 U.S.C. § 1332. At that time, therefore, there was little question that section 405(h) barred claims based on diversity jurisdiction. In 1976 however, the Office of Law Revision Counsel "revised" section 405 (h) from its general bar of jurisdiction to its present form. . . Congress adopted the codifier's revised language. . . in Subtitle D (labeled "Technical Corrections"). . . [but] at the same time Congress cautioned the courts not to interpret DEFRA's "Technical Corrections" as substantive changes. . . affecting any right, liability, status, or interpretation which existed [before the date of enactment.][25]

Where the literal application of a statute produces a result at odds with the intentions of Congress, the intentions are controlling.[26] Therefore, we find that Plaintiff's claims are controlled by the provisions of §405(h), despite invoking the Court's diversity jurisdiction, and if the Court finds that Plaintiff's claims "arise from" the Medicare Act, it will not have jurisdiction over those claims.[27]

*Plaintiff's Claims "Arise Under" the Medicare Act*

Plaintiff argues that because it seeks damages rather than Medicare payments (which Plaintiff was awarded during the administrative appeal process without the need for judicial

---

[25] Bodimetric, 903 F.2d at 488-89.

[26] Muniz v. Hoffman, 422 U.S. 454, 470 (1975); United States v. Ryder, 110 U.S. 729 (1884).

[27] The absurdity of Plaintiff's position that § 405(h) carves out an exception permitting the Court to hear claims filed pursuant to the Court's diversity jurisdiction even if the claims "arise under" the Medicare Act is underscored by the fact that, in this case, Plaintiff has filed one federal law claim in addition to its state law claims, and therefore *could* have filed pursuant to the Court's §1331 jurisdiction, invoking supplemental jurisdiction over the state law claims. Plaintiff has also filed a separate but related action against the United States. Had it instead joined the United States as a defendant in this suit, § 1346 would govern the Court's jurisdiction. Given that § 405(h) would explicitly deny this Court jurisdiction over the same claims if Plaintiff had pursued either course, the Court will not permit Plaintiff to avoid the legislative intent to require administrative review of cases arising under Medicare simply by engaging in strategic pleading.

8

review), its claims do not "arise under" the Medicare Act.

The Supreme Court has instructed courts to read the term "arising under" broadly,[28] and has developed two tests to determine whether claims arise under Medicare. First, claims that are "inextricably intertwined" with a Medicare benefits determination may arise under Medicare.[29] Second, claims in which the Medicare Act provides both the standing and the substantive basis for the presentation of the claim may arise under Medicare.[30] "A party cannot avoid the Medicare Act's jurisdictional bar simply by styling its attack as a claim for collateral damages instead of a challenge to the underlying denial of benefits. . . [if litigants were able] to obtain judicial review of these decisions by recharacterizing their claims under state and federal causes of action, the Medicare Act's goal of limited judicial review. . . would be severely undermined."[31]

The facts of this case are very similar to those of Kaiser v. Blue Cross of California[32] and Bodimetric Health Services, Inc. v. Aetna Life & Casualty.[33] In those cases, as here, a Medicare contractor refused to pay certain claims, and as a result the provider agency was forced to shut down or file for bankruptcy. The plaintiffs in both cases made numerous state common law claims similar to those raised here, seeking damages from the contractors themselves and not

---

[28] Ringer, 466 U.S. at 615; Fanning, 346 F.3d at 396.

[29] Ringer, 466 U.S. at 614.

[30] Weinberger, 422 U.S. at 760-61.

[31] Biometric, 903 F.2d at 487, citing Bowen v. Mich. Acad. of Family Physicians, 476 U.S. 667, at 680, n. 11 (1986), United States v. Erika, Inc., 456 U.S. 201, 208-209 (1982), Ringer 466 U.S. at 621-22.

[32] 347 F.3d 1107 (9th Cir. 2003).

[33] 903 F.2d 480 (6th Cir. 1990).

9

from the Medicare Trust Fund. Each court concluded that litigants who have been denied benefits should not be allowed to obtain federal jurisdiction by re-characterizing their claims under state and federal causes of action when the claims are inextricably intertwined with claims for payment under Medicare regulations.[34] Here, as in Kaiser and Bodimetric, the injury suffered is purely financial and directly caused by the withholding of payments later determined to be owed under the statutes and regulations governing Medicare.

Plaintiff's claims, though collateral, are "inextricably intertwined" with its claims for Medicare reimbursement for durable medical equipment. Plaintiff alleges injuries based on negligent, reckless, outrageous, or even malicious handling of its claims under Medicare, in breach of Defendants' statutory and common law duties of care. Plaintiff also claims that TriCenturion's entry to conduct an unannounced audit of Plaintiff's Medicare billing amounted to trespass, that Defendants interfered with Plaintiff's contractual obligations to and relationship with the Medicare program, and that TriCenturion benefitted financially, receiving bonuses from Medicare for its improper actions. Each of these allegations is inextricably intertwined with or derives its "substance and standing" from the Medicare Act.

TriCenturion's audit of Plaintiff's Medicare billing for motorized wheelchairs and hospital beds, its determination that an overpayment occurred, and NHIC's offset of that overpayment create the basis for Plaintiff's claims in this Court. The issue of overpayment and offset has previously been litigated and resolved in Plaintiff's favor in the administrative forum.

---

[34] Id. at 487; see also, Midland Psychiatric, 145 F.3d at 1004 (finding claims for tortious interference with the provider's past and prospective hospital contracts were inextricably intertwined with the Medicare carrier's denials of the provider's Medicare claims); Kaiser, 347 F.3d at 114-115 (finding that hearing most of Kaiser's claims would mean redeciding related Medicare decisions); Reg'l Med., 541 F.Supp.2d 718 (finding claims for tortious interference with contract, misfeasance, and negligent supervision were inextricably intertwined with claims for Medicare benefits).

This suit, though it seeks monetary damages beyond reimbursement for the DME provided, still arises under §405(h), and by attempting to evade the jurisdictional restrictions of § 405(h), Plaintiff is seeking greater damages than the Medicare remedial scheme permits.[35] The Medicare Act sets forth an exclusive procedure for obtaining review of any claim "arising under" it, with a limited role for judicial review, and Plaintiff's failure to follow that procedure deprives this Court of subject matter jurisdiction over Plaintiff's claims.[36]

3. Immunity

Defendants further argue that they are entitled to common law official immunity from any tort claims over which the Court has jurisdiction, as the conduct at issue arose from the performance of discretionary functions Defendants performed as Medicare contractors on behalf of the Secretary.[37] While the Court concludes it lacks subject matter jurisdiction over Plaintiff's claims and need not rule on whether Defendants are entitled to official immunity, the Court finds that immunity provides an alternative rationale for dismissing all claims in this case.

Immunity for federal employees is governed by the Westfall Act,[38] but immunity for non-governmental employees and entities acting on behalf of the government is governed by the test

---

[35] Marin v. HEW, Health Care Fin. Agency,, 769 F.2d 590, 592 (9th Cir. 1985); Reg'l. Med., 541 F. Supp. 2d at 729 (§405(h) precludes plaintiffs from augmenting their statutory remedies for wrongful denial of claims by couching their claims as state law challenges).

[36] Salfi, 422 U.S. at 757.

[37] Pani v. Empire Blue Cross/ Blue Shield, 152 F.3d 67, 69 (2nd Cir. 1998), cert. denied, 525 U.S. 1103 (1999); Peterson v. Blue Cross/Blue Shield, 508 F.2d 55, 58 (5th Cir. 1975); C. Jack Friedman, Ph.D. & Assoc., P.C. v. Pa. Blue Shield, 836 F. Supp. 263, 268 (E.D. Pa. 1993).

[38] 28 U.S.C. § 2679(d)

the Supreme Court articulated in Westfall.[39] Specifically, a contractor operating under federal statutes and regulations and under the direction of a government official will be immune from tort liability when the actions of that contractor are discretionary and within the "outer perimeter" of the contractor's official duties.[40] Acts falling within the "outer perimeter" of the contractor's official duties are those which are connected with the general matters committed by law to the contractor's control or supervision and which are not manifestly beyond its authority.[41]

The Third Circuit has not spoken on this issue, so we look to other federal courts for guidance. This Court agrees that subjecting Medicare contractors to tort suits simply because they made incorrect decisions or failed to follow all required procedures in the course of dealing with providers would "inhibit their function as independent decisionmakers."[42] Immunity is appropriate where the contribution of immunity to the effective administration of the complex Medicare program outweighs the harm to individual citizens from the grant of immunity.[43]

The Court finds that Defendants' alleged actions were discretionary. TriCenturion was performing a discretionary function when it exercised its judgment to audit Plaintiff's billing for motorized wheelchairs and medical beds and then finding an overpayment had been made to Plaintiff.[44] It is less obvious that NHIC was also exercising independent judgment when it

---

[39] Westfall v. Erwin, 484 U.S. 292 (1988); Pani, 152 F.3d at 72 (discussing the enactment of the Westfall Act and the continuing applicability of the Supreme Court ruling in Westfall).

[40] Barr v. Matteo, 360 U.S. 564, 575 (1959); Westfall, 484 U.S. at 300.

[41] Norton v. McShane, 332 F.2d 855, 858-59 (5th Cir. 1964).

[42] Group Health Inc. v. Blue Cross Assoc., 739 F. Supp. 921, 932-33 (S.D.N.Y 1990).

[43] Doe v. McMillan, 412 U.S. 306, 320 (1973).

[44] Pani, 152 F.3d at 73 ("The investigation and reporting of possible Medicare fraud is precisely the type of delegated discretionary function that the public interest requires to be protected by immunity.")

12

followed TriCenturion's instructions and withheld payments to Plaintiff to recoup the overpayment, but given the allegation in the complaint that the prior DME carrier had reversed its initial decision to withhold payment to Plaintiff, it appears that the carriers did have some discretion to determine whether TriCenturion's instructions complied with the Medicare Act and regulations.

The Court also finds that Defendants' actions fell within the outer perimeter of their official duties under Medicare.[45] It was TriCenturion's role to conduct investigations and audits of providers if it believed fraud or mistakes were occurring in the billing process. Such undertakings are essential to government objectives for the program. Medicare also permits its agents to recoup overpayments for the government by decreasing payments for other services provided under Medicare.

Accordingly, even if TriCenturion or NHIC was negligent in carrying out their auditing and administrative duties under Medicare, they are immune from liability for that negligence. Similarly, they are immune from liability for breach of the duty of care under federal law, intentional interference with contract, malicious prosecution, and claims of extreme and outrageous conduct as Plaintiff ties all of its allegations to Defendants' auditing, investigative, and administrative duties and actions under Medicare.

Only the trespass claim alleges a tort which may arguably fall outside the perimeter of the

---

[45] Plaintiff argues that the Medicare Appeals Council ("MAC") determined that the Defendants' actions were not within their duties or functions as Medicare contractors. The MAC made no such determination, nor did it find that Defendants acted in fraudulent or grossly negligent manner. Rather, the MAC found that Defendants gave Plaintiff improper notice that they were reopening certain claims, and reopened claims that they were time barred from reopening unless they first established good cause. Decision of Medicare Appeals Council, January 31, 2008, Complaint Exhibit A. The reopening and reassessment of dubious claims is one of the duties assigned to the contractors, and especially TriCenturion, by Medicare, so Defendants' actions, however sloppy procedurally, were substantively within their duties and functions as Medicare contractors.

13

contractor's duties. Plaintiff alleges that "TriCenturion intentionally entered upon the property" and "entry upon Nicole Medical's property was unlawful." In light of the complaint as a whole, however, it is clear that TriCenturion entered the property in order to perform an unannounced audit of Plaintiff's Medicare billing. Therefore, although it is alleged that TriCenturion violated regulations or procedures to effect their legal entry to conduct the audit, they are immune from liability because they exercised discretion in deciding to conduct an unannounced audit and entered the property in order to carry out that audit- duties clearly in keeping with their role as Medicare's Program Safeguard Contractor.[46]

Plaintiff claims that finding Defendants immune from the claims set forth in the complaint gives Defendants license to engage in these unlawful acts, "to do whatever they want, whenever they want, regardless of the applicable law, regardless of the rights of others, regardless of the consequences." In so stating, Plaintiff ignores the existence of the comprehensive remedial scheme set forth in the Medicare statute, through which Plaintiff has, in fact, *successfully litigated their challenge* to Defendants' recoupment of the alleged overpayment to Plaintiff.

**Conclusion**

Finding that the Court lacks subject matter jurisdiction over Plaintiff's claims, and further finding that Defendants have official immunity from the claims, the Court will dismiss this matter.

---

[46] Plaintiff also includes a claim of unjust enrichment, an equitable claim arising from an implied or quasi-contract situation. However, Plaintiff does not allege any facts reflecting the contours of an *agreement* between it and Defendants from which Defendants benefitted financially, nor a benefit *Plaintiff* conferred upon Defendants under such circumstances that it would be inequitable for Defendants to retain the benefit without payment *to Plaintiff*. EBC, Inc. v. Clark Bldg. Syst., Inc., 618 F.3d 253, 273 (3d Cir. 2010). Rather, Plaintiff alleges that TriCenturion reaped a financial benefit from Medicare as a result of Defendants' improper actions towards Plaintiff. Therefore, the complaint does not allege sufficient facts to state a claim for unjust enrichment.